Once again, I'm Robert Jobe and I'm appearing on behalf of the petitioner Harbhajan Singh Randhawa who was ordered removed in absentia on April 19, 1999 because his former attorney confused him with another client of the same name and informed him in writing on November 23, 1998 that his hearing had been reset for August 30, 1999, when in fact his hearing was scheduled for April 19, 1999. In rejecting Mr. Randhawa's ineffective assistance of counsel claim, the board said that my office, which was representing him by that point, had failed to comply with a matter of losada in that we had made a number of allegations but had not given Mr. Randhawa's former counsel, that's Madan Alawalia, an opportunity to respond. On this point, the board is simply incorrect. To support his ineffective assistance of counsel claim, Mr. Randhawa filed with the board a five-page, single-spaced affidavit which describes in great detail his relationship with Mr. Randhawa and the mistakes that Mr. Alawalia made that ultimately caused Mr. Randhawa to miss his April 19, 1999, hearing. Counsel, can I stop you right there? That evidence went to the board after the appeal was filed. Yes. And so they had it before them. It's just when I read the per curiam of March 22, 2003, it doesn't appear anywhere. It doesn't say anything about this material. You've supplied it to us. Yes. And I don't think anybody is disputing that they had it. No, they had it. We actually submitted it to the board twice. We made a motion to remand in which we submitted this evidence. And then when we filed our appellate brief to the board, we submitted the exact same evidence to the board once again. We asked them in the alternative to either remand or consider this evidence as part of the appeal and consider it as part of their adjudication. Because it's a flat-out contradiction. They said the Respondent has not shown that he has informed his counsel of these new allegations leveled against him. And it's all in that. Yeah, it's simply incorrect. I thought maybe I missed another decision of the BIA, but this is the only one I could find. It's incomprehensible. I think what the board did here, because what we did is we sent this affidavit to the board where we outlined what happened. The exact same affidavit, the very same affidavit we sent to Mr. Al-Awali and gave him an opportunity to respond, the two affidavits identical. There's no difference between them. I think what the board did is rather than look at the affidavit that we submitted, they looked at the cover letter and they ignored the affidavit that was accompanying it. And because the cover letter doesn't set forth everything that's in the affidavit, they assumed that that's all we gave Mr. Al-Awali. It's just not the case. If they'd looked at the affidavit, they would have realized that, in fact, everything we'd given to the board, we'd also give it to Mr. Al-Awali. Was this submitted or was there a hearing before the BIA? No, it was submitted on the briefs and on the papers. And there's no doubt that Mr. Al-Awali got the affidavit because, you know, we submitted the certified return receipt. This is at page 145. It was signed by his office on April 18, 1999. He just never responded. And so on this particular point, the board was just wrong. But the board made some additional errors as well. The board held that Mr. Al-Awali's error in failing to inform Mr. Rondawa of the date and time of his hearing does not amount to exceptional circumstances. Now, on this point, the board just ignored this court's decision in Fajardo. That's 300 F. 3rd, 1018. It's Ninth Circuit, 2002, where this court said that it would be, quote, difficult to imagine how a representative's failure to inform the alien of her need to appear at a deportation hearing would not constitute an exceptional circumstance excusing her absence. The court reaffirmed this holding in Monjarras, Muñoz, I believe written by Judge Hall, where the court said that if an alien fails to show up for a hearing because of an attorney, we can say that this is an exceptional circumstance beyond the control of the alien that justifies reopening. The law on this point is clear. This man didn't know that he had this hearing scheduled for April 19, 1999, and it's crazy, really, to suggest that that's not an exceptional circumstance that excuses his failure to appear. Finally, the board parroted the I.J.'s suggestion that Mr. Rondaua's failure to appear was largely due to his failure to contact his attorney for over a year preceding his April 1999 hearing. Now, in making that suggestion, the I.J. just let rank speculation get the best of her, because there's no evidence in this record that Mr. Rondaua failed to contact his attorney, and there's plenty of evidence, in fact, that he did. When Mr. Rondaua appeared before the immigration judge for the third time, because he appeared three separate times, his hearing was continued until April 3, 1998. He was in touch with his attorney and prepared to go forward on that date, but the immigration judge postponed the hearing on the government's motion until November 23, 1998. Then in September 98, while he was still maintaining contact with his attorney, the I.J. continued the hearing again, rescheduling it for April 19, 1999. And then, finally, in November 1998, Mr. Alawali made that fatal mistake of sending Mr. Rondaua another client's hearing notice and then telling him to contact his office some 15 days before August 30, 1999, by which time it was obviously way too late for him to appear at his hearing. That's a technical question. Yes. There appeared to be a double switch then, because the document that you proffered to the BIA was the August document, which was the other alien's hearing date, which appeared to be a valid notice. Yes. So, apparently, if any notice at all was sent to the other fellow, it had to be the April one, but he didn't show up, and the I.J. made note of that. Like, where is this person? We don't know. But we don't have in the record that I can see the April notice. That's right. I don't see that either. I think there was a double switch. It's not crystal clear on that point, but that's how I read the record. Possibly the other person didn't show up, but that's kind of a so what for this person. Yes. I mean, we can't explain that, because we don't even know who this other person is. And, apparently, counsel didn't recognize at that time the problem. It's just his client didn't show up. Exactly. And, in fact, I think what he did there is he went in there and he represented to the judge, not under oath, but he represented to the judge that, in fact, he'd nailed the hearing notice to this person at this address on Industrial Avenue, to our client on Industrial Avenue. And this was, I believe, let me get my chronology here. This was, I believe, April 99. He represented that he'd mailed a notice to the Industrial Avenue address in September of 1998. But, in point of fact, the record reflects that by November of 1998, Mr. Rondau was not living at that address, and Mr. Alawalia knew that. This is on page 122 of the administrative record. At that point, Mr. Rondau was, in fact, living at an altogether different address. Mr. Rondau appears or Mr. Alawalia appears to have known that, because he sent the notice of the August 30, 1999 hearing to the new address. I think he, frankly, just misrepresented to the judge. But if there are no further questions. You may save the rest of your time for rebuttal. Mr. McLaughlin? Good morning. It's a pleasure to be back in front of you. Again, I'm Andrew McLaughlin. That's a long time. I represent the Attorney General of the United States in this case. This is another case where Mr. Job and I are approaching it entirely differently. What more could this person have done, in your view? Well, there's two things that are clear here. Yes, the Board looked at the cover letter from Mr. Job to Mr. Alawalia, saying the following allegations are being made against you. And it didn't include the list that Mr. Job included in his complaint to the Board. It did not include the allegations such as the fraudulent causing him to withdraw his prior complaint. You're not answering my question. This person did not get notice of the hearing at which he didn't appear. What more could he have done since he didn't know what was happening? He showed up at everything else. He showed up three times at other things. He didn't show up this time. And we now know that the notice was sent to someone else, another John Smith, so to speak. Unfortunately, that's just false because Mr. Randhawa testified or indicated in his statement that he actually received this notice that Mr. Job just told you was mailed to the wrong address. So this notice was sent. Which notice? Yeah, which notice? The original notice of the April hearing went where? Mr. Randhawa, in his statement. I don't want to hear it. I need to just have you answer this more precise question because it's hard when we talk about the notice and the letter and that sort of thing. The April hearing for which this person did not show up. Correct. What is your understanding of what the record shows as to when, if ever, he received notice specifically of that hearing date before the date arrived? Mr. Randhawa himself, there is no indication in the record of when he received notice of that hearing date until it was certainly past due. Now, Mr. Randhawa did not move to reopen based on that hearing date until November, which is more than 180 days later, which is a significant distinction between this case and all of the other ones that Mr. Job has cited to you. Well, but that throws us into Lazada and ineffective assistance accounts. I mean, we're still talking mechanics here. It throws you into constitutional ineffective assistance as opposed to mere exceptional ineffective assistance such that it adds up to. So let me just be sure I understand it. Do you agree that he didn't receive a pre-April notice of the April hearing? That is correct. Under the statute, the notice that was provided to his attorney was sufficient and that provided him due process of his hearing. I'm not sure we're agreeing. So you're saying he got notice? The statute requires that notice be sent to his counsel. Notice was sent to his counsel. There is no dispute of that fact. And there's also no dispute that it didn't get to him. This Court has held that that satisfies due process, that notice in accordance with the statute, notice to his counsel, satisfies due process. Is there any doubt that he did not actually receive the notice in time personally? There is no evidence in the record other than his statement that he didn't find out about it until later. And there is no evidence of when he found out about it except that he filed his case six months later. Well, your argument, I mean, I understand your argument. It strikes me as Kafkaesque. I mean, it's just he told his lawyer, his lawyer told somebody else, and therefore he's out of luck. That's what the statute says, unless you have ineffective assistance to counsel such that it amounts to a constitutional violation, such that tolling would be in place. So the distinction between this case and all the ones that were cited by Mr. Jobe is all of those cases, like Lowe and Mujeraz, all of those cases the motion to reopen was filed within 180 days, and this motion to reopen was not. So we're in a different ballpark. We're in the constitutional ineffective assistance ballpark. But that's something totally different. I'm following you. I'm sorry. I didn't mean to interrupt, Judge. No, I'm fine. You're playing with 8 U.S.C. 1229. 1229, correct. And rescission of the order of absentia. Is that where we're playing? No. Okay. 1229A, 1 and 2 provide for how the notice is to be sent out. No, I agree with that. And a notice includes the fact that it can be sent to the lawyer. Correct. Which it was, and it appears that that's correct, because the lawyer says, gee, I sent it to the wrong person. So we've now got the notice coming from the immigration to the lawyer, who agrees that he got it, and it was addressed to his client, but it didn't get to him personally. Right. So we can agree, then, that the lawyer got it, and you're saying it's sufficient under 1229. Let me go a little bit further in the analysis. Based on what Mr. Job has told you today, we can also agree that the immigration judge was right in denying the motion to reopen and was not right in denying the motion to reconsider. The only thing that Mr. Job is contending that based on the new evidence that was provided by him to the Board of Immigration Appeals. I agree with you, because if we start going down your reasoning, everything fails until you get to the point where there's an ineffective constitutional ineffective assistance counsel claim that may or may not be in that affidavit. And that affidavit and information was given to the BIA. The BIA says you have not satisfied Lozada, so the only hope that this alien may have has been dashed because the BIA misread, if we understand Mr. Job's argument, misread the data sent to him. Lozada was satisfied. Ineffective assistance of counsel in this whole mess would be exceptional circumstances. That's the only track that I can see that you're arguing. There's a couple of things. First, the board acknowledged and upheld the decision of the immigration judge below that the evidence simply didn't support an ineffective assistance of counsel claim below, first. Second, they looked at this additional stuff that had been sent in, and the additional stuff included this cover letter with an affidavit attached. It did not include any kind of complaint to the board. There wasn't evidence of a complaint to the certifying agency. Whoa, whoa, whoa. Then I'm lost. I thought the record showed that there was a letter prepared by prior counsel complaining about his own conduct, that then prior counsel allegedly had him sign a document that says, I withdraw mine. Then the record would show that orally he talked to the board and said, I'm not withdrawing. What did I miss? Mr. Rondawa and Mr. Job are making allegations against Mr. Alawalia that have never been raised, allegations about repeated and unsuccessful attempts of contact and allegations about fraudulently getting him to withdraw his complaint that have never been made to the certifying agency. You're just saying if we check the allegations to the State Bar, check the affidavit attached to the letter, check what they're arguing now, they don't tie together. The only evidence in this record is that the only complaint that's ever been made to the State Board is the one letter that was made against Mr. Alawalia subsequently withdrawn one day later. No, the allegations... No, let's go one step further. There's something in the record that says he talked to Marley. If he did renunciate, whatever that is, the withdrawal of the complaint, what was in that complaint that you say is defective and doesn't notice him? The fact that he was not told about the date, that it went to his counsel, went to somebody else? I'm missing. Which complaint? You're talking about the State Bar complaint because apparently that's what you're saying is defective here because you cannot get exceptional circumstances. There are two parts to Lozada that weren't complied with. The first part is that you didn't inform the prior counsel of the precise allegations against him. They were buried in documents that were attached. They said you didn't give them a chance to respond. That's all they said in their decision. No. I'm talking about Mr. Job's letter to Mr. Alawalia that the Board faults for not identifying the allegations. Mr. Job and Mr. Rondawa, through Mr. Job, make allegations to the Board about bad, bad things that Mr. Alawalia did. Those things are buried in Mr. Rondawa's affidavit, but they are not stated as the allegations. Mr. Job clearly states what the allegations are, and those aren't them in the allegations that were made in the cover letter to Mr. Alawalia. So you're saying that Mr. Alawalia, because the cover letter doesn't contain him, was not notified, therefore Lozada's not satisfied. I believe that that's what the Board is saying. Is that what you're saying? And the next step beyond that is there's no evidence on the record that certifies this. Well, the letter says, For your reference, I have attached a copy of Mr. Rondawa's sworn declaration in which he articulates his version of these events and others surrounding your representation to him. In addition, I would be happy to provide you any documentation of my position which assists you in responding to these charges. What else does he have to do? The Board requires, and this is... It is not laid out as clearly as this in Lozada. The Board requires that you specify what the allegations are that you're making against him. That you don't just list, here's what happened. The allegations I'm making against you, as he actually made them in his appeal to the Board, were specific. The allegations that he made against him in the cover letter, and frankly, you'd have to read into the affidavit itself to draw from it that those are the allegations. The Board's saying you just didn't do what we need you to do to specify what the allegations are, to show the other attorney the seriousness of what's going on so that he can be caused to respond, so that the certifying agency can respond. And therefore, that we get the complete set of evidence in front of us. He didn't satisfy that requirement. But it all, frankly, hinges on the fact that there really isn't any constitutional finding of ineffective assistance of counsel, no matter what. Is there anything else I can help the Court with? If there's not, I'm good. I think we understand your position. Thank you. And I believe you have a little rebuttal time remaining. I just want to very briefly address the issue of what notice Mr. Randhawa had of that April 19, 1999 hearing. The only evidence in the record that he ever received any notice of that hearing is Mr. Alawali's unsworn statement that he apparently made in court when he showed up that day. And he's represented to the judge that approximately October 13, 1998, he had sent notice of that hearing to Mr. Randhawa. He later contradicted himself in his sworn statement in which he said, in fact, no. Due to a clerical error in my office, no notice was, in fact, provided to him. Well, they could both be true since they both have the same name. Quite possibly, yes. But I think all of this... Still under the same misapprehension as to who was who.  But I think all of this is somewhat irrelevant because even if Mr. Randhawa did, in fact, send, as he claimed the first time, but later contradicted, notice to Mr. Randhawa on October 13, 1998 that it's undisputed that on November 23, 1998, he sent him a new letter, the one that's in the record, saying that your hearing had been reset to August 30, 1999. But that's all irrelevant anyway because even if we get into this 120-day late appeal and whatever, the key is if you satisfied Lozada, if there was ineffective assistance to counsel, it's exceptional circumstances, and that's the answer, I think, where we're going. Or else the BIA decision doesn't make any difference. Right. I agree with that, Your Honor. Nothing further. Okay. Okay. Thank you. The case just argued is submitted. We appreciate the arguments from both counsel on those two cases. And as I mentioned previously, before we hear argument in the last case, I would ask that everyone, other than the lawyers in the case and court personnel, including our law clerks, be excused because we will be discussing some sealed records. And I thank you for your cooperation.
judges: Hall, Brunetti, Fisher